[S. F. No. 2756.   Department Two.—June 5, 1903.]

MINNIE HILLEBRAND, Administratrix of the Estate of Minnie B. McClellen, Deceased, Respondent, v. STANDARD BISCUIT COMPANY, Appellant.

ACTION FOR DEATH—MASTER AND SERVANT—NEGLIGENCE—INSECURE HATCHES OVER ELEVATOR SHAFT.—The maintenance by an employer of insecure hatches, level with the floor, not adequate to the protection of employees, and constituting a dangerous and deadly pitfall, in which the life of a female employee was lost, is such negligence as entitles her administratrix to recover for her death for the benefit of her heirs, where the jury does not find contributory negligence of the deceased.

ID.—CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT.—Where the facts do not show, as matter of law, that the deceased was guilty of contributory negligence, and the jury were not compelled to find that a person of ordinary carefulness, who was not an intruder or mere licensee, might not have done, under the circumstances, as the deceased did, the question is one of fact for their determination.

ID.—PECUNIARY LOSS TO FATHER AND MOTHER—INSTRUCTIONS.—Where it appeared that the father and mother of the deceased were her only heirs, and the jury had been correctly instructed that, in estimating damages they were limited to pecuniary loss, if any, to the parents, by reason of her death, a further instruction, that "the pecuniary loss in such case means the value in money, if any, of the life of the deceased to her father and mother," was unobjectionable.

ID.—RIGHTS OF PARENTS—REFUSAL OF INSTRUCTION—NOMINAL DAMAGES.—Parents may have a legal right to financial support from a child, at any time during its life; and where there was evidence that their deceased daughter, in addition to the wages which she received, assisted her parents in various ways, and that they had a reasonable expectation of pecuniary aid from her, an instruction asked, against the evidence, that the amount of damages should be limited to a nominal sum, was properly refused.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   John Hunt, Judge.

The facts are stated in the opinion of the court.

C. H. Wilson, for Appellant.

The deceased was guilty of contributory negligence barring recovery, having been instructed to keep off from the freight elevator. (Beach on Contributory Negligence, sec. 373; *Guenther* v. *Lockhart,* 61 Hun, 626; 16 N. Y. Supp. 717; *Davis* v. *Nuttallsburg etc. Co.,* 34 W. Va. 500; *Cullen* v. *National etc. Co.,* 114 N. Y. 45; *Savannah Ry. Co.* v. *Folks,* 76 Ga. 527; *Shanny* v. *Androscoggin Mills,* 66 Me. 420.) An employee who goes for his own convenience where duty does not call him, becomes a licensee. (*Kauffman* v. *Maier,* 94 Cal. 269, 278; *Kennedy* v. *Chase,* 119 Cal. 637;[1] *Wright* v. *Rawson,* 52 Iowa, 329;[2] *Pfeiffer* v. *Ringler,* 12 Daly, 437; *Heinlein* v. *Boston etc. R. R. Co.,* 147 Mass. 136;[3] *Evans* v. *American Co.,* 42 Fed. 519; *Pierce* v. *Whitcomb,* 48 Vt. 127;[4] *Severy* v. *Nickerson,* 120 Mass. 306;[5] *Bedell* v. *Berkey,* 76 Mich. 435.[6]) Deceased was heedless of her own safety, and voluntarily put herself in a place of danger, and was thus guilty of contributory negligence. (*McGraw* v. *Lumber Co.,* 120 Cal. 574; *Kenna* v. *Central Pac. R. R. Co.,* 101 Cal. 26; *Davis* v. *California St. R. R. Co.,* 105 Cal. 134; *Nagle* v. *California St. R. R. Co.,* 88 Cal. 86; *Glascock* v. *Central Pac. R. R. Co.,* 73 Cal. 140; *Hutchins* v. *Priestly etc. Co.,* 61 Mich. 252; *McCarthy* v. *Foster,* 156 Mass. 511; *Morrison* v. *Burgess etc. Co.,* 70 N. H. 406;[7] *Guenther* v. *Lockhart,* 16 N. Y. Supp. 717; 61 Hun, 624.) Damages must be confined to the pecuniary loss sustained by the parents, which was only nominal in this case. (*Morgan* v. *Southern Pacific Co.,* 95 Cal. 510-516;[8] *Pepper* v. *Southern Pacific Co.,* 105 Cal. 389-402; *Lange* v. *Schoettler,* 115 Cal. 388-390; *Harrison* v. *Sutter-St. Ry. Co.,* 116 Cal. 156-163; *Green* v. *Southern Pacific Co.,* 122 Cal. 563-566; *Burke* v. *Arcata etc. R. R. Co.,* 125 Cal. 364, 365;[9] *Wiles* v. *Pacific etc. Co.,* 130 Cal. 521-523.)

Gavin McNab, for Respondent.

Appellant's citations are inapplicable to the facts proved. The facts of this case are covered by the following decisions:

---

[1] 63 Am. St. Rep. 153.
[2] 35 Am. Rep. 275.
[3] 9 Am. St. Rep. 676.
[4] 21 Am. Rep. 120.
[5] 21 Am. Rep. 514.

[6] 15 Am. St. Rep. 370, and note.
[7] 85 Am. St. Rep. 634.
[8] 29 Am. St. Rep. 143.
[9] 73 Am. St. Rep. 52.

*Davis* v. *Pacific Power Co.,* 107 Cal. 574;[1] *Van Praag* v. *Gale,* 107 Cal. 438.

McFARLAND, J.—This is an action to recover damages for the death of Minnie B. McClellen, alleged to have been caused by the negligence of the defendant. The verdict and judgment were for plaintiff. Defendant appeals from the judgment and from an order denying its motion for a new trial.

The deceased, a young woman about eighteen years old, was employed by defendant in its biscuit factory, which was conducted in a five-story house. The deceased worked on the fourth floor, and she was killed by falling from that floor down an elevator shaft which ran through the building from the first to the fifth floor. The elevator cage was used for freight purposes, and the employees were not allowed to ride in it. The accident occurred at the close of business for the day. At that time the elevator car had been taken to the lower floor, and on each floor the shaft had been covered with a hatch, or trap, made of flooring, which, when in place, was level with and looked very similar to the rest of the floor. These hatches, or coverings, were apparently strong enough to be stepped upon with safety, but they were so insecurely fastened that they would not support the weight of a human being; they were intended merely to prevent draught in case of fire. A short distance from this elevator shaft on the fourth floor there was a room in which the young women employees retired at the end of the day's work to make appropriate changes in their apparel before going into the street; and from this dressing-room there was a passageway about eight feet wide, leading past the front of the shaft along which they had to go to the top of the stairway down which they had access to the street. At the front of the elevator shaft there was no railing or other protection, although on its other sides it was protected by boxes, a wall, etc. On the evening of the accident deceased was going from the dressing-room to the stairway, and when opposite the hatch which covered the shaft she took one or two steps towards the hatch and stopped, evidently for the purpose of tying her shoe or making some

[1] 48 Am. St. Rep. 156.

adjustment of her dress, and probably to escape the observation of a man who was standing in front of her at the other end of the passageway. Unfortunately, as she stooped she placed one foot on the hatch, which tilted, and she was precipitated down to the floor of the third story, where her body struck the hatch on that floor, which also gave way, and she fell to the second story, when the hatch there gave way, and she fell to the bottom of the shaft, and was killed.

1. The maintenance of the treacherous and deadly pitfalls of insecure hatches over the elevator shaft near where the employees had to go was clearly negligence on the part of the appellant, even if we do not consider the fact that there was a violation of a city ordinance by leaving the shaft unprotected.

2. The facts do not show that the deceased was, as a matter of law, guilty of contributory negligence; under the evidence the question whether or not she was so guilty was a question of fact for the jury. If she had been trying to ride in the elevator cage in violation of orders, or if she had walked into the open shaft, the contention of appellant on this point would have more force. The jury were not compelled to find that a person of ordinary carefulness might not have done under the circumstances as the deceased did. She was not an intruder or "licensee" within the rule of some of the cases cited by appellant.

3. The heirs of deceased were her father and mother, and the court, having correctly instructed the jury that in estimating the damages they were limited to pecuniary loss, if any, to the parents by reason of her death, said: "The pecuniary loss in such case means the value in money, if any, of the life of the deceased to her father and mother,"—and appellant contends that this was erroneous. We see no error in this instruction. Appellant seems to contend that the words "to her father and mother" might mean the allowance of value more than the actual pecuniary loss sustained by them by reason of the death; but there is no reasonable ground for this contention. The language objected to clearly confines the jury to the pecuniary loss, and is in no way changed by the expression "to the father and mother," who were the only persons to whom the loss was of any consequence.

4. Appellant contends for a reversal because the court refused to give the following instruction: "There is no evidence in this case tending to prove that Minnie Bernice McClellen earned wages in excess of the amount necessary to support her, or that she ever contributed toward the support of her parents or either of them, or that they had any reasonable expectation of receiving pecuniary aid from her; therefore, if you find a verdict in favor of plaintiff, you must limit the amount of damages to a merely nominal sum." The court did not err in refusing this instruction. It was not a correct statement of the evidence. There was evidence that, in addition to the wages which she was then receiving, she assisted her parents in other ways. And, considering the facts in the case, it would not have been correct to say that there was no evidence that the parents "had no reasonable expectation of receiving pecuniary aid from her." At the time of her death her earnings had increased from those of a former period, and she was still quite young. The evidence in the case at bar was different from that considered in *Burke* v. *Arcata etc. R. R. Co.*, 125 Cal. 364,[1] cited by appellant. Moreover, in the latter case the action was brought by collateral relatives who under no circumstances could have any legal right to pecuniary aid from the deceased, while parents may have the legal right to financial support from a child, and at any time during its life.

There are no other points argued in the briefs.

The judgment and order appealed from are affirmed.

Henshaw, J., and Lorigan, J., concurred.