[L. A. No. 17009. In Bank.—May 25, 1939.]

KATHERINE M. GISH et al., Appellants, v. LOS AN-
GELES RAILWAY CORPORATION (a Corporation),
Respondent.

John F. Poole and H. E. Gleason for Appellants.

Gibson, Dunn & Crutcher, Penn Cummings and John Henry Peckham for Respondent.

HOUSER, J.—While riding as a passenger on one of the street cars of the defendant corporation, plaintiff, Katherine M. Gish, assertedly sustained injuries. With relation thereto, as a foundation for an action for the recovery of a judgment for damages against the defendant, the complaint which was filed by the plaintiffs contained the following allegation, to wit:

"That on or about the 30th day of July, 1936, while plaintiff, Katherine M. Gish, was riding as a passenger for pay on the 'L' car of said defendant at or near Ninth and Westlake in the City of Los Angeles, County of Los Angeles, State of California, defendant, without regard to the rights of plaintiff, so negligently, carelessly and recklessly suddenly stopped said car with a tremendous jolt and shock as to throw plaintiff, Katherine M. Gish, against the inner portion of said railway car, severely and seriously injuring said plaintiff physically in such a manner as to cause her severe and grievous physical and mental suffering."

On the trial of the action, concerning the manner in which the accident occurred, in substance, the said plaintiff testified that after she had "boarded" an "L" car and had walked to a place therein at which she had expected to become seated, "there was a man had some packages, and he moved the packages back for me to sit down; and as he was moving those packages back, just as he had it all back, and I bended my knees just enough that I had really lost control of my feet, in a way, and just then the old 'L' car gave a tremendous jerk and lunge and it threw me against an up-

right post—solid wood post. . . . the car gave a tremendous jerk, jerk or lunge, and landed me against that post, . . . ' '
Thereafter in her testimony the said plaintiff narrated facts which related to an oral complaint which, within a few minutes after the accident had occurred, she had made to the conductor of the street car regarding the happening of the accident, the events which were connected with the manner in which shortly thereafter she had traveled to her home, and the various and sundry injuries and ills which she had sustained and suffered by reason of the accident,—in which latter facts her testimony was corroborated by other witnesses. On behalf of the defendant, both the conductor and the motorman, in substance, respectively testified that neither had knowledge of any unusual jerk or motion of the street car at or about the time when, according to the testimony of plaintiff, the "tremendous jerk" of the street car had occurred. In addition thereto, a physician testified regarding the physical condition of said plaintiff after the accident. Following some rebuttal testimony on the part of plaintiffs, the defendant presented its motion to the court that the jury be directed to return its verdict in favor of the defendant,—which motion was granted. The jury returned its verdict as directed and thereupon judgment was entered in favor of the defendant. From such judgment the instant appeal has been taken.

In making the order for a directed verdict, the trial judge indicated that the reason therefor was that the evidence was insufficient to support a judgment, if any, which might be rendered in favor of plaintiff.

Both by statutory provision and by judicial determination, it is well established that "a carrier of persons for reward must use the utmost care and diligence for their safe carriage, . . . " (Sec. 2100, Civ. Code, and annotations connected therewith.) Likewise, with reference to the authority of the trial court to direct a verdict, the various pertinent rules that relate thereto are of long standing in this state. In the opinion rendered by this court in the case of *Hunt* v. *United Bank & Trust Co.*, 210 Cal. 108, 117 [291 Pac. 184], it was ruled as follows: "Unless it can be said that, as a matter of law, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that an appellate court would be impelled to reverse it upon appeal or a

trial court set it aside, a court is not justified in taking a case from a jury and itself rendering the decision. (*Umsted* v. *Scofield Eng. Const. Co.,* 203 Cal. 224 [263 Pac. 799].) Such a motion is in the nature of a demurrer to the evidence, and is governed by practically the same rules, and concedes as true the evidence on behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom. (*Butler-Veitch, Inc.,* v. *Barnard,* 77 Cal. App. 709 [247 Pac. 597].) Even though a court might be justified in granting a new trial it would not be justified in directing a verdict on the same evidence. (*Estate of Caspar,* 172 Cal. 147 [155 Pac. 631].) The power of a court in passing upon such motions is strictly limited. It has no power to weigh the evidence, but is bound to view it in the most favorable light in support of the verdict. The right of a court to direct a verdict is the same as the right of a court to grant a nonsuit. This can be done only when, disregarding conflicting evidence and giving plaintiffs' evidence all the value to which it is legally entitled, including every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such verdict was given. (*Newson* v. *Hawley,* 205 Cal. 188 [270 Pac. 364].)'' To the same effect, see *McCurrie* v. *Southern Pacific Co.,* 122 Cal. 558 [55 Pac. 324], wherein it is declared (syllabus) that: ''Evidence tending to show that plaintiff was injured at a regular station at which the train had stopped, owing to the sudden jerking of the train backward and forward, by reason of which he lost his balance, and was compelled to steady himself by taking hold of the casing of the door, when the door swung to and injured his hand, is sufficient to authorize a jury to find a verdict in his favor, and it is error for the court, upon such evidence, to direct a verdict for the defendant.''

It becomes obvious, therefore, that, after according to the evidence which was adduced by the plaintiffs all the value to which in law it was entitled, unless such evidence was insufficient legally to support a verdict in favor of the plaintiffs, no authority was vested in the trial court to direct the jury to return its verdict in favor of the defendant. With that principle of law in mind, appellants direct attention to the language employed by them in the allegation of their complaint (hereinbefore set forth), together with the sub-

stance of the evidence that was adduced in their behalf; and in that connection, it is contended by them that, having established the fact that at a time when the said plaintiff was a passenger on a street car, she sustained an injury which was caused by some act of the defendant in operating the same, by application of the doctrine known as *res ipsa loquitur,* a presumption of negligence on the part of the defendant was created,—which in itself constituted sufficient evidence to entitle plaintiff to have the issue of negligence, and the cause, generally, submitted to the jury for its determination. On the other hand, although not questioning the general effect of the doctrine of *res ipsa loquitur* in a proper situation, it is urged by the respondent that by reason of the language in which the allegation which relates to the asserted negligence of the defendant was couched, plaintiffs were precluded from relying upon the benefit of the rule in that regard, and, as a consequence thereof, that only in the event the remainder of the evidence was sufficient to support a verdict which might have been returned in favor of the plaintiffs, were the plaintiffs entitled to have the jury pass upon the question of whether the defendant had been negligent in the operation of the street car upon which Mrs. Gish was a passenger at the time when she sustained the injuries of which she had complained. More particularly, in effect, the respondent contends that, having alleged the particular means by, or the manner in which, the said plaintiff sustained the injuries of which she complained, and, within the same allegation or count of the complaint, having declared on the general negligence of the defendant,—the plaintiffs thereby had precluded themselves from the benefit which, in the absence of such form of pleading, ordinarily would or might have accrued to them. In that regard, as authority for its position, the respondent has cited the case of *Connor* v. *Atchison etc. Ry. Co.,* 189 Cal. 1 [207 Pac. 378, 26 A. L. R. 1462]. Therein it appears that while the plaintiff was "acting as a fireman" on a train that then was being operated by the defendant, he sustained injuries which were caused by the derailment of said train at a time when it was crossing a bridge. In ruling upon the question of the applicability of the doctrine of *res ipsa loquitur,* it was held (syllabus) that: "The doctrine of *res ipsa loquitur* is not applicable to an action for personal injuries received by a locomotive fireman from the giving away of an abutment of a bridge while his

train was passing over it, where, instead of alleging negligence *in general terms* and proving the happening of the accident, the plaintiff both alleged and proved that the support was washed away by a cloudburst shortly before the accident and predicated his charge of negligence on the failure to inspect the track after the cloudburst and before the train had passed over the bridge.'' (Emphasis added.) Similar rulings were made where it was alleged: ''(1) That the defendant's track was uneven and unsafe; (2) that the defendant's car was not equipped with a rear-view mirror in front of the motorman; (3) that the exit of the car was not guarded by a door or gate; (4) that the motorman negligently failed to stop the car at Q Street after having been requested to do so; (5) that he negligently propelled the car past Q Street at a dangerous rate of speed'' (*Marovich* v. *Central California T. Co.*, 191 Cal. 295 [216 Pac. 595]); and that '' ' ·. . . at the time the defendants parked said automobile, as aforesaid, they so carelessly and negligently applied the brakes of said automobile as to permit the said automobile to roll down said slope . . . and to strike plaintiff . . . ' '' (*Porter* v. *Rassmussen*, 127 Cal. App. 405 [15 Pac. (2d) 888]); also, in an action to recover damages from a lighting company, which damages ensued by reason of the destruction of certain property by fire alleged to have been caused by the negligence of the defendant, where the defendant was specifically charged with negligence, namely: '' '(1) In installing transformers improperly and insufficiently grounded. (2) In installing fuses between its transformers and power lines of such size and strength as to afford inadequate or no protection to plaintiffs' property against excessive voltage. (3) In holding closed the breakers at its substation for several minutes after they had kicked out. . . . ' '' (*Harker* v. *Southern Cal. Edison Co.*, 83 Cal. App. 204 [256 Pac. 848].) To like effect, see *Hall* v. *San Joaquin L. & P. Corp.*, 5 Cal. App. (2d) 755 [43 Pac. (2d) 856]; *Matthews* v. *Southern Pac. Co.*, 15 Cal. App. (2d) 36 [59 Pac. (2d) 220].

On the other hand, repeatedly it has been ruled that, notwithstanding the fact that in a single count of a complaint for damages, the plaintiff therein alleges both general negligence and specific acts of negligence, he is not precluded from, but, to the contrary, is entitled to, the benefit in his favor which arises from the application of the doctrine of *res ipsa loquitur*,—the only requirement in such circumstances

being that the plaintiff has the burden of establishing the specific acts of negligence which he alleges.

The respective conclusions which were reached by appellate tribunals in each of the following cases attest and apply the foregoing principle, to wit: In the case entitled *Mudrick* v. *Market Street Ry. Co.*, 11 Cal. (2d) 724 [81 Pac. (2d) 950, 118 A. L. R. 533], in which it was contended that the plaintiff, a passenger, sustained injuries by reason of the jerking of a cable car, the complaint contained allegations of both general and specific negligence. The defendants contended that there was no place in the case for the application of the doctrine of *res ipsa loquitur*. In refusing to sustain that contention, this court there said: "The point has been directly ruled against the contention of the defendants. (*McComas* v. *Al. G. Barnes Shows Co.*, 215 Cal. 685, 697 [12 Pac. (2d) 630].) The other contentions made by the plaintiff during the presentation of his case . . . if they had also been alleged in his pleading would have constituted *other* specific allegations of negligence and *would not have changed the rule.*" (Emphasis added.) Likewise, it was held that plaintiff was entitled to the application of the rule (*Roberts* v. *Sierra Ry. Co.*, 14 Cal. App. 180 [111 Pac. 519]) where allegations that were contained in a complaint were to the effect that while the plaintiff was a passenger on a train which was transporting both passengers and freight, which included a carload of dynamite, the "defendant carelessly and negligently allowed its railway track upon which said train was running to become obstructed, and said defendant carelessly and negligently allowed certain obstructions to fall or become placed thereon, and so negligently and carelessly managed and operated its said locomotive and train that a portion of said train, to wit, several cars thereof, including said carload of dynamite, became and were, on said day last aforesaid, wholly derailed. That by reason of the derailment of said cars and the concussion caused thereby, said carload of dynamite was instantly exploded and by reason thereof a violent explosion occurred." In the case entitled *Murray* v. *United Railroads*, 49 Cal. App. 462 [193 Pac. 596], it was held that the doctrine might be invoked. In that case it was alleged that on a specified date when the street car upon which plaintiff was a passenger "was run or operated around the curve or loop in defendant's tracks at that point, and while on said curve or loop was stopped by said defendant for the

purpose of enabling passengers to alight therefrom; that after said car had been stopped by said defendant for said purpose the plaintiff arose from her seat within said car for the purpose of walking to the end thereof and alighting therefrom, and that after she had thus arisen and was about to walk toward the end of said car in order to alight therefrom the defendant 'negligently and carelessly and without allowing said plaintiff sufficient time to walk toward the end of said car to alight therefrom, suddenly started said car, and then and there and by reason thereof caused said plaintiff to lose her balance and fall with great force and violence upon the floor of said car', from which she received the injuries complained of. . . . '' In a comprehensive opinion in the case of *Atkinson* v. *United Railroads of San Francisco*, 71 Cal. App. 82 [234 Pac. 863], it was ruled that the allegation and "proof" of specific acts of negligence that the defendant '' 'negligently and carelessly, and without any notice or warning, ran and operated said street car . . . at a greater rate of speed than fifteen miles per hour, in violation . . . ' of the municipal ordinance . . . '' did not deprive the plaintiff of the benefit of the doctrine of *res ipsa loquitur* as far as those specific acts of negligence were concerned. In commenting upon the apparent strictness of the rule that hereinbefore has been stated, in part, the court said: ''In adopting a rule for this state, we are of the opinion that it was not intended to declare an absolute and unqualified rule, that is, one so drastic as to deny plaintiffs in all cases, and under all circumstances, the benefit of the doctrine of *res ipsa loquitur*, merely because they have voluntarily gone further than the law required them to go, in particularizing the specific acts of negligence upon which they relied for a recovery; but that it was intended that the more liberal rule should be followed which restricts plaintiff, in his proof and recovery, to the specific acts alleged, and relieves the defendant from the burden of exculpating himself from any other acts of negligence than those alleged, but which does not, so far as those particular acts of negligence are concerned, deprive plaintiff of the benefit of the doctrine of *res ipsa loquitur*.'' The ruling in the case just cited has been followed in many succeeding cases. See *Queirolo* v. *Pacific Gas & Elec. Co.*, 114 Cal. App. 610, 616 [300 Pac. 487], where the allegation in the complaint was ''that due to the negligent operation of the truck by defendant's driver the same ran

off the highway and turned over causing injury to the plaintiff''; *Chauvin* v. *Krupin,* 4 Cal. App. (2d) 322 [40 Pac. (2d) 904], where in addition to an allegation of negligence in general terms, the plaintiff ''alleged generally the acts performed by defendants in the course of their work, namely, the adjustment of the heater to the head, the use and manipulation of the heater, and the failure to protect plaintiff sufficiently against contact therewith''. Similar rulings appear in each of the following cases, to wit: *McCole* v. *Merchants Express Corp.,* 19 Cal. App. (2d) 149 [64 Pac. (2d) 1130]; *Ellis* v. *Jewett,* 18 Cal. App. (2d) 629 [64 Pac. (2d) 432]; *Mintzer* v. *Wilson,* 21 Cal. App. (2d) 85 [68 Pac. (2d) 370]; *Phillips* v. *Southern Cal. E. Co., Ltd.,* 23 Cal. App. (2d) 222 [72 Pac. (2d) 769]; *Lynch* v. *Market Street Ry. Co.,* 130 Cal. App. 433 [19 Pac. (2d) 1009]; *Lippert* v. *Pacific Sugar Corp.,* 33 Cal. App. 198 [164 Pac. 810]; *Soto* v. *Spring Valley Water Co.,* 39 Cal. App. 187 [178 Pac. 305].

It thus becomes manifest that, in an appropriate case, in pleading not only general negligence, but also specific acts which lie at the foundation of the civil wrong of which the plaintiff complains, and which purport to account for or explain the underlying reason for the happening of the accident with its consequent injuries to the plaintiff, which may have resulted in the premises, the plaintiff is not penalized by a complete loss or forfeiture of the rights and benefits to which he is or may be entitled under the doctrine of *res ipsa loquitur.* They still remain intact, but are confined in their operation to a narrower scope; that is to say, that, although in a general way the inference of negligence on the part of the defendant still persists, it applies only to the acts, conduct, manner or means that the plaintiff has particularized or specified in his complaint. In the matter of his ''proof'', the plaintiff is restricted to evidence that may be supportive of his specific allegations; and ordinarily, in such circumstances, the defendant is required to rebut that evidence only. As to the cause of action, in general, the burden of ''proof'' still remains with the plaintiff. As a consequence, in the instant case, even assuming that, in ''proof'' of the specific acts and conduct of the defendant which the plaintiffs alleged, they produced but little evidence of a substantial character,—nevertheless, since (as hereinbefore limited) the original inference of negligence of the defendant was left undisturbed, notwithstanding the assumed

strength of the evidence that was presented by the defendant, —the plaintiffs were entitled to have the question of whether the injuries of which they complained were occasioned by the negligence of the defendant, submitted to the jury for its determination. (19 Cal. Jur., p. 717.)

However, aside from the legal effect of a pleading of negligence generally, which is coupled with an allegation of the specific act or conduct of the defendant as the asserted cause of the accident, it appears from a consideration of the several adjudications of the appellate tribunals of this state which bear upon the question of the "form" of an allegation of specific acts, where the form of the pleading involved in the respective cases was such that the plaintiff would be deprived of the full and undiminished benefit of the application of the doctrine of *res ipsa loquitur,*—it becomes apparent that, in the instant case, measured by the pleading in question, the plaintiffs should not be adjudged to have forfeited any part of their original rights in the premises.

Reverting to the essential language employed in the instant case in the allegation of negligence of the defendant, it will be noted that it is charged that the defendant "so negligently, carelessly and recklessly suddenly stopped said car with a tremendous jolt and shock . . . ". Admitting the existence of the rule that a specific allegation of the cause of the injury may have the effect of depriving the plaintiff of a part of the benefit of the application of the doctrine of *res ipsa loquitur,* in each of several cases decided by the appellate court of this state—in which the facts which related to the immediate cause of the injury were alleged more specifically and with greater particularization than were the facts in the instant case—it has been held that the plaintiff was not "prohibited from relying upon the doctrine". To illustrate:

In the case of *Soto* v. *Spring Valley Water Co.,* 39 Cal. App. 187 [178 Pac. 305], it appears that the defendant therein was engaged in the work of the construction of a dam, in connection with which it "operated a stationary steam-engine which rotated a drum, on which ran a wire cable", which "was attached to a metal scoop, or scraper, which it pulled back and forth over a gravel pit to the top of a sieve, or screen, supported by timbers. On the last-named date, the defendant was employed moving rock under this structure". With respect to the point here under consideration,

in part, the court said: "Defendant claims, however, that as the complaint alleged specifically negligence in the operation of this machinery, and defects in the strength of the timbers, that the plaintiff cannot invoke the doctrine of the maxim; and further contends that the evidence showed the specific cause of the accident, and that, therefore, the maxim may not be invoked, . . . We think, however, that this question is foreclosed in this state by the doctrine of the case of *Lippert* v. *Pacific Sugar Corporation,* 33 Cal. App. 198 [164 Pac. 810]. It may be added that in this case the real moving cause of this accident is not shown. It is true that it appears that the scraper, for some reason, was dragged too far by the cable, thus wrecking the timbers, but this *is only the result of some other cause* which must have been the underlying reason for the accident. This underlying cause is not proven, but it does seem to us that nothing could be clearer than that somebody's carelessness must have caused it." (Emphasis added.) And it was ruled (syllabus) that a "plaintiff is not prohibited from relying upon the doctrine because she alleged specifically negligence in the operation of the machinery and defects in the strength of the timbers".

Likewise, in the case of *Queirolo* v. *Pacific Gas & Elec. Co.,* 114 Cal. App. 610, 616 [300 Pac. 487] (hereinbefore referred to), where, in substance, it was alleged that "due to the negligent operation of the truck by defendant's driver the same ran off the highway and turned over, causing injury to plaintiff", it was held that the plaintiff was entitled to the full and undiminished application of the doctrine.

In the case of *Lejeune* v. *General Petroleum Corp.,* 128 Cal. App. 404 [18 Pac. (2d) 429], it appeared that in weighing anchor of a boat on which the plaintiff was employed and, according to the allegation contained in his complaint " ' " "while plaintiff was engaged in stowing away the anchor chain in the performance of his duties as aforesaid the officers, servants and employees of said defendant herein, and each of them, so carelessly and negligently operated a certain winch and its appliances used to haul in said anchor and to stow said anchor chain, and said winch and its appliances and said anchor chain were, by reason of the negligence of defendants and each of them, so defective and insufficient that said anchor chain, while the same was being hauled in by defendant, its officers, agents and employees as aforesaid, and stowed by plaintiff and another employee in the 'star-

board' chain locker on said steamer 'Lebec', suddenly reversed and violently proceeded in the opposite direction, and plaintiff was thereby violently thrown from his feet against some portion of said chain locker, and as a proximate result thereof plaintiff sustained great bodily injury", . . . ' " It was there held that such allegation "did not prevent the operation of the doctrine of *res ipsa loquitur* where the allegations did not attempt to explain or set out the cause of the accident or the specific manner in which it occurred, but were merely general allegations of negligence".

The syllabus in the case of *Armstrong* v. *Wallace*, 8 Cal. App. (2d) 429 [47 Pac. (2d) 740], contains the following declaration of the law, to wit: " . . . where the complaint alleged that defendant doctor negligently and carelessly deposited and left an abdominal sponge or gauze pad within the abdomen of plaintiff wife and that he negligently and carelessly closed the incision and sutured the same without first removing said sponge or gauze pad, and no attempt was made to describe the negligence in detail nor charge why or under what circumstances it occurred, the form of the complaint was not such as to prevent the application of the doctrine of *res ipsa loquitur*; . . . "

Analogously, in an action for the recovery of damages which resulted from injuries caused by falling plaster while the plaintiff was occupying a room in a hotel, it was ruled (syllabus) that, "where the complaint alleged merely that the ceiling 'was of a faulty construction and its condition had been allowed to become defective and unsafe by the defendants through their failure to properly operate, manage, control and maintain said building in which said hotel was conducted', and there was no attempt to explain or set out in detail wherein the construction of the ceiling was faulty, nor to state specifically the reason why the plaster fell",— the allegations were "nothing more than general allegations of negligence", and the plaintiff was not precluded from invoking the doctrine of *res ipsa loquitur*. (*Mintzer* v. *Wilson*, 21 Cal. App. (2d) 85 [68 Pac. (2d) ·370].)

In an action to recover a judgment for damages sustained by a plaintiff by reason of the wrongful death of her husband, which occurred at a time when he was being transported on an auto stage as a passenger for "reward" by the defendant in the action, it was held (syllabus) that an "allegation in the complaint that defendant operated the

stage 'in such careless, reckless, wanton and negligent manner that said auto-stage was overturned' and deceased was instantly killed, did not deprive plaintiff of the benefit of the doctrine of *res ipsa loquitur;* neither was plaintiff deprived of the benefit of such doctrine by reason of the fact that plaintiff went further than required in proving her *prima facie* case in offering some testimony as to the manner in which the overturning occurred, where such proof was a part of the *res gestae* and did not disclose the cause of the overturning as a definite fact.'' (*Seney* v. *Pickwick Stages*, 82 Cal. App. 226 [255 Pac. 279].)

It appears in the case of *Murray* v. *United Railroads*, 49 Cal. App. 462 [193 Pac. 596] (hereinbefore cited), the facts were similar to those that are alleged in the instant case, particularly with reference to the fact that, as far as the plaintiff knew, and as was related by witnesses, the direct cause of the accident was the ''suddenness and jerkiness and jolting'' which ensued on the starting of a street car on which the plaintiff was being transported. With reference thereto, in part, the court said: ''Whether this method of starting a car after it had been stopped for the purpose of enabling passengers to alight and while passengers were in the act of alighting was or was not negligence on the part of the defendant was clearly a question for the jury. . . . The trial court, therefore, properly denied the defendant's motion for a directed verdict.''

The ruling in the case of *Chauvin* v. *Krupin*, 4 Cal. App. (2d) 322 [40 Pac. (2d) 904], hereinbefore referred to, is also in point. That action was for the recovery of a judgment for damages alleged to have been caused by the defendants in negligently inflicting a burn upon the scalp of the plaintiff at a time when she was receiving a ''permanent wave'' in a ''beauty parlor'' that was operated by the defendants. It was held (syllabus) that ''the original complaint was sufficient to charge negligence in general terms and to allow the application of the doctrine of *res ipsa loquitur,* where it alleged generally the acts performed by defendants in the course of their work, namely, the adjustment of the heater to the head, the use and manipulation of the heater, and the failure to protect plaintiff sufficiently against contact therewith, which acts constituted the entire operation undertaken by defendants in which plaintiff might have received her injuries, and they were all charged

to have been done in a negligent manner''. With reference to the effect of the allegations, in part, the court said: ''Under the original complaint, plaintiff was entitled to describe, as she did in her testimony, the acts of the defendants in the course of their work. She was not required under these allegations, nor did she undertake to attribute the injury to any specific act of either defendant; nor did she attempt to explain how it occurred. Both the complaint and the testimony of plaintiff clearly show that she did not know, or claim to know, the particulars in which defendants acted negligently, whether in the placing of the heater upon her head, its use or manipulation, or the inadequate protection provided against injury from burns.''

Again, in the instant case, referring to the language which was employed by the plaintiffs in their allegation of the negligent act of the defendant, to wit, that the street car was negligently and suddenly stopped ''with a tremendous jolt and shock'', it is apparent that plaintiffs merely alleged the *effect* of the act of the defendant in causing the street car to be suddenly stopped. The particular conditions which may have been the inducing cause of the ''tremendous jolt and shock'' which occurred to the street car on the sudden stopping thereof were omitted from the allegations that were contained in the complaint. Not a word was used by plaintiffs to describe in detail or otherwise any assumed negligent act of the defendant, or to narrate any facts with reference to the control by it of the street car, which either immediately or ever preceded the happening of the accident. In other words, no attempt in any way was made by plaintiffs to account for the sudden stop, or to explain the cause thereof. All that was disclosed by the facts which were alleged by plaintiffs in their complaint was the result which ensued from some apparently unknown primary cause.

It becomes manifest, therefore, that notwithstanding the fact that by their pleading both general and special negligence was alleged, plaintiffs should not have been deprived of the benefits to which they were entitled in the application of the doctrine of *res ipsa loquitur*.

It is clear that an inference of the truth of facts essential to a cause of action will support a judgment which may be rendered in accordance with such facts. (19 Cal. Jur., pp. 704, 717.) And although to the comprehension of a trial judge, evidence to the contrary of such an inference

may greatly preponderate, nevertheless the ultimate question of the weight that should be accorded to the evidence which may have been presented by the respective parties to the litigation is one for the exclusive original determination by the jury.

In the instant case, it follows that the jury should not have been directed to return its verdict in favor of the defendant. It becomes unnecessary to devote attention to other contested points of law which have been suggested for consideration.

The judgment is reversed.

Curtis, J., Langdon, J., and Shenk, J., concurred.